**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**NOAH HALLOWELL,** )<br>)<br>**Defendant.** ) | 8:07CR302<br><br>**REPORT AND<br>RECOMMENDATION** |

An evidentiary hearing was held June 18, 2008 on the defendant's Motion to Dismiss Indictment [11]. The hearing transcript [18] was filed on June 23, 2008, at which time the motion was deemed submitted.

The indictment alleges that, from May 27, 2007 through August, 2007, in the District of Nebraska, the defendant knowingly failed to register and update his sexual offender registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). Defendant contends the indictment should be dismissed because.

- Congress lacked the authority under the Commerce Clause to enact SORNA's registration requirements and criminal provision because the activities covered by SORNA do not involve interstate commerce;

- Congress allowed the Attorney General to legislate the scope of SORNA's retrospective reach, in violation of the non-delegation doctrine;

- The statute violates the ex post facto clause of the U.S. Constitution by criminalizing conduct that has already occurred and by increasing the punishment for conduct that has already occurred;

- Defendant had no knowledge or notice of SORNA's registration requirements at the time the conduct occurred and the indictment violates the Due Process Clause; and

- It is a violation of the Tenth Amendment for Congress to compel the states to accept registrations from federally mandated sex offender programs.

## I. FACTUAL BACKGROUND

For purposes of this motion, and by agreement of the parties during oral argument, the court adopts the statement of facts set forth in the parties' briefs (Filings 12 & 14).

In 1995, defendant Hallowell pled guilty and was convicted in this court, Case No. 8:95CR58, of Sexual Abuse of a Minor in violation of 18 §§ U.S.C. 1153 and 2243. He was sentenced to 15 months imprisonment. He completed the term of imprisonment in June 1996 and was placed on supervised release. He violated the terms of his supervised release and was released from his revocation sentence on or about April 28, 2000. Defendant signed a Federal Bureau of Prisons sex offender registration and treatment notification form on April 28, 2000.

Following his April 2000 release, defendant had a second violation of supervised release based, in part, on allegations that he failed to register as a sex offender. He was sentenced to six months imprisonment on or about May 1, 2001. Upon his release, the defendant registered with state authorities from 2002 to 2007, reporting that he lived at his mother's address in Walthill, Nebraska. On July 10, 2006, defendant signed a Nebraska State Patrol Sex Offender Registry form indicating that he understood his obligations, including the requirement that he inform the Sheriff of any moves within the State of Nebraska.

In May 2007, defendant moved from his mother's home in Walthill, Thurston County, Nebraska to Dakota City, Dakota County, Nebraska. He did not register with officials in Dakota County and did not inform Thurston County of the move. Authorities learned of the move by an anonymous call to the Thurston County Sheriff's Office.

The State of Nebraska has not implemented any regulations as set forth in the Sex Offender Registration and Notification Act.

## II.  LEGAL ANALYSIS

Since 1994, pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Jacob Wetterling Act"), federal law has required sex offenders to register their addresses with state law enforcement for a minimum period of 10 years after release from prison. 42 U.S.C. § 14071(b)(6).  Under the Jacob Wetterling Act, which is still in effect, the first time a sex offender knowingly fails to register is deemed a misdemeanor with a potential sentence of up to one year imprisonment.  For a second offense, a sex offender faces up to 10 years imprisonment. 42 U.S.C. § 14072(i).

The Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. 109-248, 120 Stat. 587, was enacted July 27, 2006.  Title I of the Adam Walsh Act consists of the Sex Offender Registration and Notification Act ("SORNA"), which sets new federal registration requirements for sex offenders:

>   **(a)  In general**
>   A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
>   **(b)  Initial registration**
>   The sex offender shall initially register–
>   > (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>   > (2) not later than 3 business days after being sentenced for that offense, if
>   > the sex offender is not sentenced to a term of imprisonment.
>
>   **(c)  Keeping the registration current**
>   A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

>That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
>**(d) Initial registration of sex offenders unable to comply with subsection (b) of this section**
>
>The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
>
>**(e) State penalty for failure to comply**
>
>Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

Pub. L. 109-248, Title I, § 113, 120 Stat. 593 (2006), codified at 42 U.S.C. § 16913.

SORNA included new federal criminal penalties for failing to register as a sex offender, providing for a maximum penalty of 10 years imprisonment:

>(a) In general.– Whoever–
>(1) is required to register under [SORNA];
>(2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>(3) knowingly fails to register or update a registration as required by [SORNA];
>shall be fined under this title or imprisoned not more than 10 years, or both.

Pub. L. 109-248, Title I, § 141(a)(1), 120 Stat. 602 (2006), codified at 18 U.S.C. § 2250(a). Thus, to obtain a criminal conviction under 18 U.S.C. § 2250, the government must prove: (1) the Defendant is a sex offender subject to registration under SORNA; (2) federal jurisdiction exists either because the defendant was convicted as a sex offender under federal law or because the

defendant traveled in interstate or foreign commerce; and (3) the defendant knowingly failed to register or update his sex offender registration as required.

On February 28, 2007, the U.S. Attorney General issued an interim rule[1] pursuant to 42 U.S.C. § 16913(d) announcing that SORNA applies to sex offenders convicted before enactment of SORNA of an offense for which registration is required. *See* 72 F.R. 8894-01, 2007 WL 594891, codified at 28 C.F.R. § 72.3.

States that do not comply with the requirements of SORNA are subject to funding reductions, as provided in 42 U.S.C. § 16925.

### A. Constitutionality of SORNA

In this case, the defendant was convicted of a federal sex offense and was ordered, as a condition of supervised release, to register as a sex offender. He now challenges the constitutionality of SORNA's registration provisions and criminal penalties.

#### 1. Commerce Clause

> The Constitution does not grant Congress a general police power. See U.S. Const. amend. X; *United States v. Lopez*, 514 U.S. 549, 567 (1995). The general police power is instead reserved to the states. *Id*. Article I, section 8 of the Constitution, however, grants Congress the power to regulate commerce within and between the states. U.S. Const. art. I, § 8, cl. 3. In *Lopez*, the Supreme Court outlined the three areas under which legislation must fall to be within Congress' Commerce Clause power. 514 U.S. at 558-59. Congress may regulate (1) the use of the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) those activities that substantially affect interstate commerce. *Id*. A statute need only fit within one of these prongs to be constitutional under the Commerce Clause. *Id*.

---

[1] The interim rule states that it "serves the narrow[], immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA."

> In considering the constitutionality of the individual component of SORNA, the issue is whether the statute's jurisdictional element, the requirement that a defendant "travel[ ] in interstate or foreign commerce," brings the statute under one of the prongs described above. *See* 18 U.S.C. § 2250(a)(2)(B); *Lopez*, 514 U.S. at 558-59.

*United States v. Ditomasso*, — F. Supp. 2d —— , 2008 WL 1994866 at *9-10, Case No. CR 07-132ML (D.R.I., May 8, 2008).

This court has found two cases holding that SORNA is invalid under the Commerce Clause. In *United States v. Powers*, 544 F. Supp. 2d 1331 (M.D. Fla. 2008), the district court noted that SORNA "has nothing to do with commerce or any form of economic enterprise," and held that the registration requirements of 18 U.S.C. § 2250(a) were enacted in violation of the Commerce Clause because there was no nexus between the crime of failure to register and the interstate travel:

> The Commerce Clause, and the case law interpreting its limits, require more than statutory "lip service" to interstate commerce. In [*United States v. Morrison*, 529 U.S. 598, 609 (2000)], the Supreme Court referred to the need for a jurisdictional element that would (a) limit the statute's reach to conduct which has an "explicit connection with or effect on interstate commerce," *id.* at 611 (emphasis added), or (b) establish that the statute is in "pursuance of Congress' power to regulate interstate commerce," *id.* at 613. The language of § 2250(a)(2)(B) accomplishes neither of those things. [T]he statute does not become applicable to an individual until after that person has completed his or her interstate travel. And it applies to persons who have engaged in interstate travel regardless of how legitimate their reasons for such travel may have been. The mere fact that the individual has, at some point, traveled in interstate commerce does not establish that his or her subsequent failure to register "substantially affects interstate commerce." Simply put, there is no nexus between the crime (failure to register) and the interstate travel.

544 F. Supp. 2d at 1335 (parallel citations omitted). This conclusion was soon rejected by another judge of that district:

> [The *Powers* decision] gave only cursory treatment of the reasoning of this Court and a number of others that have upheld SORNA's constitutionality: that the enactment of SORNA was a valid use of Congress' power to "protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." (citing *Lopez*, 514 U.S. at 558-59)).

> SORNA's jurisdictional element brings the Act squarely within Lopez's second prong. Soon after *Lopez* was decided, the Eleventh Circuit ruled that Congress may use a jurisdictional provision in a federal criminal statute to bring the statue within the commerce power. *United States v. McAllister*, 77 F.3d 387, 389-90 (11th Cir. 1996) (upholding 18 U.S.C. § 922(g) which criminalizes a convicted felon's possession of a firearm that has traveled in interstate commerce); *see also United States v. Shivers*, 390 F. Supp. 2d 1067, 1068 (N.D. Fla. 2005) (reconciling[2] *McAllister* and *Lopez*). In such cases, the crime need only have a "minimal nexus" to interstate commerce to survive facial review....

*United States v. Mason*, Case No. 6:07-CR-52, 2008 WL 1882255 at *2 (M.D. Fla., Apr. 24, 2008) (footnotes and citations omitted).

Very recently, in *United States v. Waybright*, 2008 WL 2380946, — F. Supp. 2d ——— (D. Mont., June 11, 2008), the district court held that the enactment of 42 U.S.C. § 16913, requiring all sex offenders to register regardless of whether they travel in interstate commerce, was not a valid exercise of congressional authority under the Commerce Clause.

In the case at bar, however, the defendant is alleged to be a sex offender by reason of a conviction under Federal law, and the indictment is not based on his traveling in interstate commerce. The defendant does not appear to contest the authority of the United States Congress to require federally-convicted sex offenders to register in accordance with 42 U.S.C. § 16913.

Assuming, without deciding, that he has standing to raise this constitutional challenge, arguments the same as, or similar to, the defendant's have been discussed at length and rejected by at least three judges of this court. *See, e.g., United States v. Zuniga*, 2008 WL 2184118, Case No. 4:07CR3156 (D. Neb. May 23, 2008) (Judge Kopf); *United States v. Craft*, 2008 WL 1882904, Case

---

[2]The Eighth Circuit has applied the "minimal nexus" standard in conjunction with 18 U.S.C. § 922(g)(1) (being a felon in possession of a firearm). *See United States v. Sianis*, 275 F.3d 731,734 (8th Cir. 2002); *United States v. Carter*, 270 F.3d 731, 734-35 (8th Cir. 2001).

No. 4:07CV3168 (D. Neb., Apr. 23, 2008) (Judge Urbom); *United States v. Hacker*, 2008 WL 312689, Case No. 8:07CR243 (D. Neb., Feb. 1, 2008) (Judge Smith Camp).

Congress is empowered under the Commerce Clause "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez,* 514 U.S. at 558. It is the precedent of this court that SORNA's registration requirements and the related penalty provision of 18 U.S.C. § 2250 do not violate the Commerce Clause. The intervening decisions in *United States v. Powers* and *United States v. Waybright* have not persuaded me to make a recommendation to the contrary.

### C. Non-Delegation Doctrine[3]

The "non-delegation doctrine" is derived from article I, section 1 of the U.S. Constitution: "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative power to another branch of Government. 'The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government.'" *Touby v. United States*, 500 U.S. 160, 164-65 (1991) (quoting *Mistretta v. United States*, 488 U.S. 361, 371 (1989)); *see also United States v. Garfinkel*, 29 F.3d 451 (8th Cir. 1994). The majority of courts considering the issue have concluded that the doctrine was not violated with respect to the enactment of SORNA.

---

[3]The court will assume, without deciding, that the defendant has standing to raise this argument; however, Judge Kopf's recent decision in *United States v. Zuniga*, Case No. 4:07CR3156, 2008 WL 2184118 (D. Neb. May 23, 2008) (adopting the Report & Recommendation of Magistrate Judge Piester) suggests that the defendant lacks standing. "If the '[d]efendant has not been charged under rules promulgated by the Attorney General,' but rather 'has been charged by Congress and its legislative mandate that is codified in § 2250,' he lacks standing to raise the non-delegation issue as a basis for dismissal." 4:07CR3156, Filing 40 at p.22 (quoting *United States v. Gonzales*, 2007 WL 2298004 at *12 (N.D. Fla., Aug. 9, 2007). *See also United States v. Cardenas*, 2007 WL 4245913 at *9 (S.D. Fla., Nov. 29, 2007)

> In enacting 42 U.S.C. § 16913(d), Congress authorized the Attorney General to create gap-filling provisions to insure SORNA's statutory purpose is effectuated when sex offenders fall outside the purview of Section 16913(b). [*U.S. v. Mason*, 510 F. Supp. 2d 923, 928 (M.D. Fla. 2007)]. The courts have uniformly held that 42 U.S.C. § 16913(d) sufficiently identifies the "intelligible principle governing the extent of authority delegated" to the Attorney General, and does not unlawfully cede to the Attorney General the core legislative function of defining federal crimes. *See Hacker*, 2008 WL 312689, at *2. *See also, U.S. v. Utesch*, 2008 WL 656066, at *10 (E.D. Tenn. March 6, 2008); *U.S. v. Howell*, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008); [*U.S. v. Samuels*, 2008 WL 169792, at *9 (E.D. Ky. Jan. 17, 2008)]; *U.S. v. LeTourneau*, 2008 WL 112105, at *6 (S.D. Tex. Jan. 6, 2008); *U.S. v. Dixon*, 2007 WL 4553720, at *5-6 (N.D. Ind. Dec. 18, 2007); [*U.S. v. Gould*, 526 F. Supp. 2d 538, 545-46 (D. Md. 2007)]; *Cardenas*, 2007 WL 4245913, at *13; *U.S. v. Pitts*, 2007 WL 3353423, at *7-8 (M.D. La. Nov. 7, 2007); [*U.S. v. Gill*, 520 F. Supp. 2d 1341, 1349 (D. Utah 2007)]; *U.S. v. Ambert*, 2007 WL 2949476, at *7 (N.D. Fla. Oct. 10, 2007); [*U.S. v. Lovejoy*, 516 F. Supp. 2d 1032, 1035 (D.N.D. 2007)]; *U.S. v. Kelton*, 2007 WL 2572204, at *1 (M.D. Fla. Sept. 5, 2007); *U.S. v. Sawn*, 2007 WL 2344980, at *3 (W.D. Va. Aug. 15, 2007); *Gonzales*, 2007 WL 2298004, at *11; *Mason,* 510 F. Supp. 2d at 927-28; [*U.S. v. Hinen*, 487 F. Supp. 2d 747, 753 (W.D. Va. 2007)]; *U.S. v. Madera*, 474 F. Supp. 2d 1257, 1261 (M.D. Fla. 2007)[4]. *But see, U.S. v. Aldrich*, 2008 WL 427483, at *6 n.5 (D. Neb. Feb. 14, 2008) (Bataillon, J.) (expressing concern that 42 U.S.C. § 16913(d) violates the non-delegation doctrine by allowing the Attorney General to legislate the length of time, scope, and reach of the retroactive application of SORNA).

*United States v. Zuniga*, 2008 WL 2184118 at *13, Case No. 4:07CR3156, Filing 40 at p.23.

Considering the weight of the authority, and this court's decisions in *United States v. Hacker* and *United States v. Zuniga*, I find that the defendant's argument is without merit.

**D. Ex Post Facto**

The ex post facto clause of the United States Constitution[5]

> forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes

---

[4]The district court's decision in *Madera* was reversed on May 23, 2008. *United States v. Madera*, 528 F.3d 852 (11th Cir. 2008).

[5]Article I, § 9, cl. 3 of the United States Constitution states, "No Bill of Attainder or ex post facto law shall be passed."

-9-

> additional punishment to that then prescribed." ... Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.... The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation....
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.... [A] law need not impair a "vested right" to violate the ex post facto prohibition. Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements.... The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham*, 450 U.S. 24, 28-31 (1981) (footnotes and citations omitted).

SORNA, 42 U.S.C. § 16913(d), delegated to the Attorney General the task of specifying the applicability of SORNA's registration requirements to sex offenders convicted before July 27, 2006. In other words, the legislation "required the Attorney General to animate SORNA's provisions to previously convicted offenders." *United States v. Kapp*, 487 F. Supp. 2d 536, 542 (M.D. Pa. 2007). The necessary specification was made on February 28, 2007 with the issuance of the interim regulation. The charged offense allegedly occurred after the interim regulation became effective. With respect to SORNA, courts have held that an ex post facto clause violation occurs when applied to those previously-convicted persons who traveled in interstate commerce before the Attorney General's interim rule was announced. *See United States v. Patterson*, Case No. 8:07CR159, 2007

WL 3376732 (D. Neb., Nov. 8, 2007) (adopting Report & Recommendation of Magistrate Judge Gossett), *appeal dismissed*, Case No. 07-3769 (8th Cir., Feb. 19, 2008). *See United States v. Madera*, 528 F.3d 852 (11th Cir. 2008) (since the Attorney General had sole discretion to determine whether SORNA was to be retroactively applied to sex offenders convicted before its enactment date, SORNA's scope was undefined prior to that determination, and defendant could not be prosecuted for violating SORNA during the gap period between SORNA's enactment and the Attorney General's retroactivity determination); *United States v. Howell*, Case No. CR07-2013, 2008 WL 313200 (N.D. Iowa Feb. 1, 2008). Activity occurring during the "gap period" between July 27, 2006 and February 28, 2007 is not at issue in this case. *See, e.g., United States v. Lovejoy*, 516 F. Supp. 2d 1032, 1036 (D.N.D. 2007).

It appears to be well-settled that SORNA's registration requirements do not violate the ex post facto clause.

> In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court considered whether a sex offender registration and notification law constituted retroactive punishment forbidden by the *Ex Post Facto* Clause. In *Smith*, the Supreme Court held that the sex offender and notification law "is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause." *Id*. at 105-06. The Alaska law in question in *Smith* is strikingly similar to SORNA, including its requirements and how the information is disseminated on the internet. Accordingly, for the reasons set forth in *Smith*, the Court finds that SORNA is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause.

*United States v. Templeton*, Case No. CR-06-291, 2007 WL 445481 (W.D. Okla., Feb. 7, 2007).

The judges of this district have generally acknowledged the civil regulatory purpose of SORNA: to "protect the public from sex offenders and offenders against children" through the establishment of "a comprehensive national system for the registration of those offenders." *United States v. Craft*, 2008 WL 1882904 at *2; *United States v. Hacker*, 2008 WL 312689 at *2 (the

-11-

purpose of SORNA is to track sex offenders from one jurisdiction to another and create a comprehensive national offender registry); *United States v. Zuniga*, 2008 WL 2184118 at \*5. *Contra United States v. Aldrich*, Case No. 8:07CR158, 2008 WL 427483 (D. Neb., Feb. 14, 2008).

I conclude that the defendant is not being prosecuted under 18 U.S.C. § 2250 for acts that did not violate SORNA when they occurred. Under the statutory language of SORNA, federal law is violated when a sex offender fails to maintain or update his or her sex offender registration as required under 42 U.S.C. § 16913(a). *See, e.g., Cardenas*, 2007 WL 4245913, at \*13. The registration requirements of SORNA applied to the defendant at least as of February 28, 2007. Each element for prosecution under 18 U.S.C. § 2250 allegedly occurred after SORNA was enacted and after it clearly applied to the defendant. *See United States v. Zuniga*, 2008 WL 2184118 at \*14; *United States v. Cardenas*, 2007 WL 4245913, at \*10.

For these reasons, SORNA does not violate the ex post facto clause as to this defendant.

**E.  Due Process**

Defendant complains that there is no evidence he actually knew that SORNA had been enacted, and enforcement of 18 U.S.C. § 2250 against him violates the due process clause of the Fifth Amendment to the U.S. Constitution. The same, or substantially similar, argument was recently rejected by Judge Urbom in *United States v. Craft*, 2008 WL 1882904 at \*5:

> [C]iting *Lambert v. California*, 355 U.S. 225 (1957), the defendant argues that actual notice is required when "passive" conduct is criminalized, and here there is no evidence that the defendant had actual notice of SORNA's registration requirements.
>
> In *Lambert,* the Supreme Court held that a defendant's conviction under Los Angeles' felon registration ordinance violated principles of due process because there was no evidence that the defendant possessed actual knowledge of the duty to register. The Court recognized that actual knowledge is not required when "the commission of acts, or the failure to act under circumstances that should alert the

-12-

> doer to the consequences of his deed," is criminalized, noting that "[t]he rule that 'ignorance of the law will not excuse' is deep in our law." 355 U.S. at 228 (citations omitted). It found, however, "that actual knowledge of the duty to register or proof of the probability of such knowledge" is required "where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* at 228-29. The Court observed that the "severity" of punishing passive conduct, such as failing to register, "lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it." *Lambert,* 355 U.S. at 229. Thus, the Court concluded that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he many not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." *Id.*
>
> *Lambert,* therefore, "carves out a very limited exception to the general rule that ignorance of the law is no excuse." *United States v. Hutzell,* 217 F.3d 966, 968 (8th Cir. 2000). The exception applies when 1) the defendant's conduct was "wholly passive," 2) the defendant was "unaware of any wrongdoing" (i.e., the default was "entirely innocent"), and 3) there is an absence of "circumstances that should alert the doer to the consequences of his deed" – or, more specifically, an absence of circumstances that "move [him] to inquire as to the necessity of registration." *Lambert,* 355 U.S. at 228-29.

The *Lambert* exception is "unavailing" if the defendant's "lack of awareness of the prohibition was objectively unreasonable," and can apply "only to prohibitions on activities that are not per se blameworthy." *See United States v. Hutzell*, 217 F.3d at 968.

Judge Urbom concluded that principles of due process do not require proof of the defendant's actual knowledge of the duty to register under SORNA or proof of the probability of such knowledge. *United States v. Craft*, 2008 WL 1882904 at *6.

> It is true that SORNA criminalizes the same sort of "wholly passive" conduct – failure to register – that was at issue in *Lambert*. In other respects, however, the instant case is distinguishable. Clearly, it cannot be said that the defendant was unaware of any wrongdoing or that his failure to register was "entirely innocent." Nor can it be said that there was an absence of circumstances that should have alerted the defendant to the consequences of failing to register or moved him to inquire as to the necessity of registration.

In addition, it is not clear to me that the defendant's "lack of awareness of the prohibition was objectively [ ]reasonable." *Hutzell*, 217 F.3d at 968. In *Hutzell*, the court explained,

> The district court observed (correctly, we believe) that an individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be subject to regulation. We also agree with the observation in *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir. 2000), *cert. denied*, 529 U.S. 1121 (2000), that "it should not surprise anyone that the government has enacted legislation in an attempt to limit the means by which persons who have a history of domestic violence might cause harm in the future." Although an individual's right to bear arms is constitutionally protected, the possession of a gun, especially by anyone who has been convicted of a violent crime, is nevertheless a highly regulated activity, and everyone knows it.
>
> No one can reasonably claim, we think, to be unaware of the current level of concern about domestic violence; it is the subject of daily news reports and other media attention. There is evidence, in addition, that § 922(g)(9) was the subject of considerable public scrutiny and discussion both before and after its enactment. At any rate, in the present social circumstances, we believe that it is simply disingenuous for Mr. Hutzell to claim that his conviction under § 922(g)(9) involved the kind of unfair surprise that the fifth amendment prohibits.

217 F.3d at 968-69 (citations omitted). I would not go so far as to say that it is "disingenuous" for the defendant to claim that his prosecution under 18 U.S.C. § 2250(a) violated the notice and fair warning requirements of the Fifth Amendment's Due Process Clause; indeed, the defendant's case presents a number of unique circumstances – including the absence of guidelines from the Attorney General and the fact that the relevant states have not yet implemented SORNA – that seem to lend support his argument that he could not reasonably have known that his failure to register amounted to a federal crime. Nevertheless, it seems to me that the court's reasoning in *Hutzell* is applicable here. In particular, "it should not surprise anyone" that the government has enacted legislation that makes the failure to register as a sex offender a federal offense. In fact, SORNA's "predecessor" statute, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. No. 103-322, 108 Stat.1976, 2038-2042 (1994), as amended by the Pam Lynchner Sexual Offender Tracking and Identification Act of 1996, Pub. L. No. 104-236, § 1-11, 10 Stat. 3093, 3096-98 (1996) (codified as amended at 42 U.S.C. §§ 14071-14072, 14703), provided that persons who fail to register under states' sexual offender registration programs could face criminal sanctions. *See* 42 U.S.C.

-14-

> § 14072(i). In other words, the notion that a person violates federal law by failing to register as a sex offender is not new.

*United States v. Craft*, 2008 WL 1882904 at *6.

Judge Urbom was not persuaded that "the *Lambert* exception to the general rule that 'ignorance of the law is no excuse'" should be applied in *Craft*. Nor am I persuaded that the exception should apply in this case. The defendant has previously been imprisoned for supervised release violations involving failure to register. He did, in fact, register from 2002 to 2007, and the notion that failure to register violates federal law "is not new."[6]

In *United States v. Lovejoy*, 516 F. Supp. 2d 1032 (D.N.D. 2007), the district court considered the defendant's argument that subjecting him to criminal prosecution under SORNA would violate his due process rights because he was not given adequate notice that his conduct would violate the new federal law. The conduct at issue all occurred after the Attorney General issued the interim regulation. The court found there was no due process violation:

> Several courts have determined that actual notice of SORNA's registration requirements is not required even for conduct that occurred prior to the promulgation of the rule. *See United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007); *United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007); *United States v. Gonzales*, No. 5:07-cf-27-RJ, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007). In *Roberts*, the defendant was alleged to have violated SORNA by criminal conduct that occurred in November 2006. The defendant argued that he was denied due process because he did not receive notification of SORNA's federal registration requirements. *Id.* at *2. The court in *Roberts* held as follows:

---

[6]Judge Urbom specifically noted that his decision on this issue conflicted with Chief Judge Bataillon's opinion in *United States v. Aldrich,* No. 8:07CR158, 2008 WL 427483 (D. Neb., Feb.14, 2008). "It appears, however, that the Chief Judge's decision was based in significant part upon the fact that the defendant's failure to register in that case occurred before SORNA was made retroactively applicable, and therefore "he could not knowingly fail to register under SORNA. *See id.* at 9, 2008 WL 427483 at *5." 2008 WL 1882904 at *8.

> Defendant claims he was denied due process because he received no notification of SORNA's requirements. This amounts to a claim that ignorance of the law excuses non-compliance. Unsurprisingly, Defendant cites no authority for this proposition, which is at odds with centuries of Anglo-American jurisprudence. Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected keep [sic] themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation. *See, e.g. United States v. Mitchell,* 209 F.3d 319, 322 (4th Cir. 2000) (knowledge that firearm ownership was prohibited not necessary to sustain conviction under 18 U.S.C. § 922(g)). Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.

*Id*.

*United States v. Lovejoy*, 516 F. Supp. 2d at 1032. The court also observed that SORNA does not

> mandate that defendants who are already registered as sex offenders and who were previously sentenced before the enactment of SORNA, but who have been released from custody, receive any specific notice regarding the new federal registration requirements. *See* 42 U.S.C. § 16917. It is apparent that Congress understood that those convicted of a sex offense prior to SORNA's enactment on July 27, 2006, were aware of the basic requirements to register as a sex offender and the consequences for failing to do so.

*Id.* at 1038.

I concur with the reasoning in *United States v. Craft* and *United States v. Lovejoy* and find that subjecting the defendant to criminal prosecution under SORNA does not violate his due process rights under the Fifth Amendment.

### F. Tenth Amendment

The Tenth Amendment to the U.S. Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited to it by the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.

The various states have not been "forced" to comply with SORNA, although they are encouraged to comply with SORNA's comprehensive national program to avoid reductions in federal funding. *See* 42 U.S.C. § 16925(d). While Congress has offered encouragement to the states to enact SORNA's provisions, it remains the prerogative of the states to implement SORNA. *See United States v. Cardenas*, 2007 WL 4245913 at *14; *United States v. Zuniga*, 2008 WL 2184118 at *20; *United States v. Hacker*, 2008 WL 312689, at *2. The state component of SORNA is voluntary. States have the option not to comply, at the risk of losing a portion of their federal funding. *United States v. Ditomasso*, 2008 WL 1994866 at *11.

In any event, as discussed above, SORNA was enacted in accordance with the Commerce Clause and, therefore, does not violate the Tenth Amendment because Congress has acted under one of its enumerated powers. *See United States v. Hacker*, 2008 WL 312689 at *3; *United States v. Craft*, 2008 WL 1882904 at *11; *United States v. Zuniga*, 2008 WL 2184118 at *20.

Turning to the defendant's assertion that Congress has no power to compel local law enforcement to accept registrations from federally mandated sex offender programs, I find that the defendant does not have standing to raise the issue. Because the defendant was already required to register pursuant to the Nebraska Sex Offender Registration Act, Neb. Rev. Stat. §§ 29-4001 to 29-4014, SORNA did not require any Nebraska state officials to do anything they were not already required to do under Nebraska law. The defendant has not suffered any injury as a result of

"Congress' alleged commandeering of state officials." *United States v. Waybright*, 2008 WL 2380946 at *12.

### III. RECOMMENDATION

For all the reasons discussed above, this court believes the defendant's arguments for dismissal to be without merit. Accordingly,

**IT IS RECOMMENDED** that defendant's Motion to Dismiss Indictment [11] be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED July 3, 2008.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**